## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MANSOOR AHMAD and | : | CIVIL NO. 3:12CV1307(AWT) |
| NAVEED AHMAD | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | | |
| | | |
| YELLOW CAB COMPANY OF | : | |
| NEW LONDON AND GROTON, INC., | : | |
| CONNECTICUT DEPARTMENT OF | : | |
| TRANSPORTATION, and VEOLIA | : | |
| TRANSPORTATION SERVICES, INC. | : | December 13, 2012 |
| *Defendants* | | |

## DEFENDANT DOT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

The defendant, State of Connecticut Department of Transportation ("DOT"), hereby moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the plaintiffs' complaint against DOT in its entirety for the following reasons: (1) the plaintiff's claims under Conn. Gen. Stat. § 46a-60 et seq. and 42 U.S.C. § 1983 as to DOT for money damages are barred by the Eleventh Amendment; (2) The plaintiff's due process and equal protection claims under 42 U.S.C. § 1983 are barred by sovereign immunity; (3) the court lacks subject matter jurisdiction in that there is no employer-employee relationship between the plaintiffs and DOT; (4) the plaintiffs' due process and equal protection claims fail as a matter of law and (5) the plaintiffs' claims under the Rehabilitation Act are legally insufficient.

## I.   INTRODUCTION

Plaintiffs Mansoor Ahmad ("Mansoor") and Naveed Ahmad ("Naveed") bring this action for alleged employment discrimination pursuant to Conn. Gen. Stat. §§ 46a-60 et seq., the

Connecticut Fair Employment Practices Act ("CFEPA"); the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, et seq; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq., Title VII, and 42 U.S.C. § 1983 alleging violations of equal protection and due process under the Fourteenth Amendment.  The alleged discriminatory conduct of which Mansoor complains is termination of his employment with defendant Yellow Cab Company of New London and Groton, Inc. ("Yellow Cab") and revocation of a certificate permitting him to work at Bradley International Airport.  (Complaint ¶¶ 3, 12).

Plaintiffs were employed by Yellow Cab as taxicab drivers (Complaint ¶ 3).  Mansoor claims to suffer from dog phobia/simple phobia that allegedly "precludes him from engaging in many major life activities unless afforded the reasonable accommodation of having no contact with dogs." (Complaint ¶ 8).  Mansoor does not allege he is substantially limited from engaging in any major life activities, nor does he articulate which major life activities he is allegedly "precluded" from engaging in.  The Complaint alleges only that he cannot have any contact with dogs. (Complaint ¶ 8).

On June 10, 2011, Mansoor was in the taxi line at Bradley International Airport awaiting his turn to pick up a passenger.  (Complaint ¶ 9).  When Mansoor's turn in line came, Judith McCarthy, a dispatcher,[1] assigned him to the next awaiting passenger – an individual with a service dog (Complaint, ¶ 9).  Mansoor refused to take the passenger on account of his alleged phobia.  Plaintiffs were subsequently terminated from their employment (Complaint ¶ 12, 13) and purportedly filed Complaints with the Connecticut Commission on Human Rights and Opportunities (Complaint, ¶ 7).  There is no right-to-sue letter attached to the Complaint.

The plaintiffs' complaint contains sixteen (16) counts.  The Counts against defendant

---

[1] In plaintiff's opposition to Defendant Veolia's Motion to Dismiss, the plaintiff identified Ms. McCarthy as an employee of Veolia. (Doc. # 24, p. 1).

DOT are Count Three (CFEPA by Mansoor Ahmad alleging discrimination based upon his disability and refusal to provide him with a reasonable accommodation); Count Four (CFEPA by Naveed Ahmad); Counts Nine and Ten (Rehab Act); Counts Thirteen (equal protection claim by Mansoor Ahmad); and Counts Fourteen and Fifteen (procedural due process claims by both plaintiffs).[2]

The counts against DOT should be dismissed.  First, like Veolia Transportation Services Inc., DOT was and is not either Mansoor or Naveed Ahmad's employer pursuant to CFEPA or the Rehabilitation Act or any other provisions.   Further, Counts Three, Four, Thirteen, Fourteen and Fifteen are barred by Eleventh Amendment immunity and sovereign immunity. Additionally, the Complaint is devoid of any factual allegations that support his underlying claims of discrimination against DOT:  there are no factual allegations concerning Mansoor's alleged "disability," how he is allegedly substantially limited in any major life activity, or how he is an otherwise qualified individual with a disability.  Nor do the factual allegations suggest a plausible claim for race or national origin discrimination.

For the reasons set forth below, the defendant DOT hereby submits this memorandum of law in support of its Motion to Dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12.

II.     **ARGUMENT**

A.   **Standard Governing Motion to Dismiss**

The function of a motion to dismiss is "merely to assess the legal feasibility of the

---

[2] Plaintiff has withdrawn his CFEPA, ADA and Title VII claims against Veolia Transportation Services Inc in an apparent recognition of the lack of an employer/employee relationship.  See plaintiff's brief in opposition to Veolia Transportation Services Inc.'s motion to dismiss, Doc. # 24, page 2.

complaint, not to assay the weight of the evidence which might be offered in support thereof."

Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984)

(internal quotation marks omitted).  When considering a Rule 12(b) motion to dismiss, the Court

accepts as true all factual allegations in the complaint and draws inferences from these

allegations in the light most favorable to the plaintiff. See Hishon v. King & Spalding, 467 U.S.

69, 73 (1984).

### B.  Standard for Rule 12(b)(6) Motion

For a complaint to survive a motion to dismiss for failure to state a claim pursuant to

Rule 12(b)(6), a plaintiff must plead enough facts to suggest a plausible claim for relief.

Ashcroft v. Iqbal, 556 U.S. at 667-678; Bell Atlantic v. Twombly, 550 U.S. at 555-558; Fed. R.

Civ. P. 12(b)(6).  In order to state a claim, the factual allegations contained in the complaint

"must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at

555.  Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to

plausible, [its] complaint must be dismissed." Twombly, 550 U.S. at 555.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged" and must show "more than a

sheer possibility that a defendant has acted unlawfully."  Iqbal, 566 U.S. at 678 (emphasis

added).  Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

at 678 (internal citations and quotations omitted).  "Determining whether a complaint states a

plausible claim for relief will … be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." Id. at 679.

This standard applies to all civil actions.  Id. at 684.  The pleading must include "more

than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678. General allegations of discrimination or simply tracking statutory language is therefore insufficient to properly raise a claim for relief. Twombly, 550 U.S. at 555; Iqbal, 566 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Accordingly, based on the Supreme Court's holding in Iqbal and Twombly, numerous courts have dismissed employment discrimination and other claims where, as here, the plaintiff has failed to state a "plausible" claim for relief. See, e.g., Harris v. Mills, 572 F.3d 66, 74 (2d Cir. 2009) (granting 12(b)(6) motion to dismiss holding that allegations did not state claim for failure to provide reasonable accommodation under the ADA); Argeropoulos v. Exide Techs., No. 08-CV-3760 (JS), 2009 WL 2132443, at *5-6 (E.D.N.Y. July 8, 2009) (granting Rule 12(b)(6) motion to dismiss Title VII claims where plaintiff plead only two incidents that could arguably be considered national origin harassment and a "conclusory and entirely non-specific allegation that similar conduct occurred on a 'daily and continuous basis because he is Greek,'" and holding that "without more information concerning the kinds of anti-Greek animus directed against Plaintiff, and the frequency thereof, the Court cannot conclude that Plaintiff's claim is 'plausible'"); Ansley v. Florida, Dept. of Revenue, No. 4:09cv161 (RH/WCS), 2009 WL 1973548, at *2 (N.D. Fla. Jul. 8, 2009) (granting Rule 12(b)(6) motion to dismiss Title VII and other claims where "plaintiff comes to this battle 'armed with nothing more than conclusions,'" alleging only that he was treated badly and eventually fired on a pretext, that the real reasons for the poor treatment and firing included his gender and medical condition, and that similarly-situated others were treated better; noting that "[t]hese allegations might have survived a motion to dismiss prior to Twombly and Iqbal. But now they do not.").

A complaint will not survive a motion to dismiss if it relies on "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements," or if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." See e.g., Thompson v. Rizzitelli, et al., 2011 U.S. Dist. LEXIS 33060, at *7 (D. Conn. Mar. 29, 2011), quoting Iqbal, 129 S. Ct. at 1949-50.

## II.     THE CLAIMS IN COUNT THREE, FOUR, THIRTEEN, FOURTEEN AND FIFTEEN MUST BE DISMISSED

### A.     The Eleventh Amendment Deprives this Court of Jurisdiction over Any Claims Brought Under Conn. Gen. Stat. §46a-60

The plaintiffs allege in the Third and Fourth Counts that defendant DOT discriminated against the plaintiff in violation Connecticut General Statutes § 46a-60 et seq. These claims are barred by the Eleventh Amendment and therefore, must be dismissed.

The Eleventh Amendment to the United States Supreme Court provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

In enacting the Connecticut Fair Employment Practices Act (hereinafter "CFEPA"), Conn. Gen. Stat. § 46a-59 et seq., the State of Connecticut did not waive its Eleventh Amendment immunity to suits in federal court. The Eleventh Amendment immunity "extends to suits brought against a state, it agencies or state official sued in their official capacities." Lyons v. Jones, et al., 168 F. Supp. 2d 1, 5 (D. Conn. 2001). Sections 46a-99 and 46a-100 expressly limit suits to redress violations of CFEPA to actions brought in the *Connecticut Superior Courts* only. Section 46a-100 state:

> Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from the commission in accordance with section 46a-83 or 46-101, **may also bring an action in the superior court for the judicial district in which the**

> **discriminatory practice** is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the judicial district of Hartford.

Conn. Gen. Stat. § 46a-100 (emphasis added).

The State's consent to be sued **in federal court** must be unequivocally expressed.

<u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. at 99, 104 S. Ct. at 907.    "A State's constitutional interest in immunity encompasses not merely whether it may be sued, **but where it may be sued**." <u>Id</u> 465 U.S at 100, 104 S. Ct. at 907 (emphasis added).

> For this reason, **the Court consistently has held that State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts**. <u>See, e. g., Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Assn</u>., 450 U.S. 147, 150 (1981) (per curiam). "[It] is not consonant with our dual system for the federal courts . . . to read the consent to embrace federal as well as state courts. . . . [A] clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found." <u>Great Northern Life Insurance Co. v. Read</u>, 322 U.S. 47, 54 (1944).

<u>Id</u> 465 U.S at 100, 104 S. Ct. at 908(emphasis added).

> [I]t is important to note that a state's common law sovereign immunity and a state's immunity from suit in federal court under the Eleventh Amendment **are separate,** but related **concepts**. <u>See, e.g., Magnolia Venture Capital Corp. v. Prudential Securities, Inc.,</u> 151 F.3d 439, 443 (5th Cir.1998) ("Sovereign immunity, as it has been interpreted in the federal courts, actually encompasses two separate, but related, concepts—state sovereign immunity, or common law sovereign immunity, and Eleventh Amendment immunity, or constitutional sovereign immunity"); see also 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3524, at 171 & n. 84 (2d ed. 1984) ("**A state's decision to waive its common law sovereign immunity should not be confused with its constitutional sovereign immunity provided by the Eleventh Amendment. A state can allow suits against it or its instrumentalities in its own courts without consenting to suit in federal court. Thus, a federal court should not infer that a state has consented to suit in federal court merely because it has waived its common law sovereign immunity in its own courts**"). Thus, "it is important to keep in mind that a state may waive its common law sovereign immunity without waiving its Eleventh Amendment immunity under federal law." <u>Magnolia</u>, 151 F.3d at 443, <u>citing Port Authority Trans Hudson Corp. v. Feeney</u>, 495 U.S. 299, 306 (1990); <u>In re Allied Signal, Inc</u>., 919 F.2d 277, 280 n. 4 (5th Cir.1990). Thus, a state may consent to being

sued in its own courts, while still retaining Eleventh Amendment immunity from
suit in federal court. <u>Magnolia,</u> 151 F.3d at 443, <u>citing Florida Dept. of Health and
Rehabilitative Servs. v. Florida Nursing Home Ass'n.,</u> 450 U.S. 147, 150 (1981)
(state's general waiver of sovereign immunity did not constitute waiver by state of
Eleventh Amendment immunity); <u>Great Northern Life Ins. Co. v. Read</u>, 322 U .S.
47, 54–55 (1944) (same), <u>Sherwinski v. Peterson</u>, 98 F.3d 849, 851–52 (5th
Cir.1996) (same).

    <u>Cates v. State of Connecticut Dep't of Corrections</u>, 2000 WL 502622, *14 (D. Conn.

April 13, 2000)(copy attached).

    The issue of the state's waiver of its immunity for redress of unfair employment practices

in federal courts was addressed by this court in the case of <u>Walker v. State of Connecticut</u>**,** 106

F.Supp. 2d 364 (D.Conn. 2000).  In <u>Walker</u>, a former deputy sheriff sued the department and

county officials for the alleged discriminatory practices prohibited by Title VII of the Civil

Rights Act of 1964.  Included within the plaintiff's federal lawsuit were several causes of action

for violations of CFEPA.  The court held that it lacked jurisdiction to proceed with the CFEPA

claims against the state stating:

> Counts Four and Eight of the Complaint allege violations of the CFEPA.  The
> only way Plaintiff may bring a CFEPA claim in federal court against the State is
> by the consent of the State to be sued in that forum.  The State has waived its
> immunity, but only as to cases brought in the Superior Court.  Conn. Gen. Stat.
> Section 46a-99 provides that: Any person claiming to be aggrieved by a violation
> of any provision of sections 46a-70 to 46a-78, in-inclusive, may petition the
> **superior court** for appropriate relief and **said court** shall have the power to grant
> such relief, by injunction or otherwise, as it deems just and suitable. . . . . .'A state
> does not consent to suit in federal court by consenting to suit in the courts of its
> own creation.' <u>Smith v. Reeves</u>, 178 U.S. 436, 441-445, 20 S.Ct. 919, 44 L.Ed.
> 1140, (1900).  This Court declines Plaintiff's invitation to hold that simply
> because the State has consented to be sued in state court, it *a fortiori* must have
> meant to consent to federal jurisdiction also.  '[I]t is not consonant with our dual
> system for the federal courts. . .to read the consent to embrace federal as well as
> state courts . . .[A] **clear declaration** of the state's intention to submit its fiscal
> problems to other courts than those of its own creation must be found.' <u>Great
> Northern Life Insurance Co. v. Read</u>, 322 U.S. 47, 54, 64 S.Ct 873, 88 L.Ed. 1121
> (1944)(empahsis added), <u>quoted in Pennhurst State School & Hosp. v.
> Halderman</u>, 465 U.S. 89, 99-100n. 9, 104 S.Ct 900, 79 L.Ed.2d 67 (1983). The

Court believes that the wording of the Connecticut statute, quoted verbatim, is the antithesis of the clear declaration mandated by <u>Great Northern</u>.

<u>Id.</u> at 370 (emphasis in original).

The reasoning in <u>Walker</u> is equally applicable to the present case. The plaintiff's state law claims predicated on violations of CFEPA may not be brought in federal court by virtue of the Eleventh Amendment and therefore Counts Three and Four must be dismissed.

**B.    The Eleventh Amendment Bars Plaintiff's Equal Protection and Due Process Claims Brought under 42 U.S.C. § 1983**

Similarly, Counts Thirteen, Fourteen and Fifteen also are barred by the Eleventh Amendment and must be dismissed.   More specifically, plaintiff purports to sue the State of Connecticut pursuant to 42 U.S.C. § 1983 for alleged violations of the equal protection and due process protections under the Fourteenth Amendment to the United States Constitution.  It is well settled that such claims are barred by the Eleventh Amendment.

As stated by the United States Supreme Court:

[First] [t]he Eleventh Amendment confirmed rather than established sovereign immunity as a constitutional principle . . . .    [Second]  [t]he Constitution by delegating to Congress ***the power to establish the supreme law of the land when acting within its enumerated powers, does not foreclose a State from asserting immunity to claims arising under federal law merely because the law derives not from the State itself but from the national power***. . . .the State's sovereign immunity was understood to extend beyond state-law causes of action.

<u>Alden v. Maine</u>, 527 U.S. 706, 728-29, 732, 735 (1999)(emphasis added).

"Eleventh Amendment immunity 'is not a mercurial area of law, but has been definitively settled by the Supreme Court since 1890 with respect to actions against the state itself' . . . ."

<u>Gollomp v. Spitzer</u>, 568 F.3d 355, 367 (2d Cir. N.Y. 2009).

That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated

decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification. Ex Parte State of New York No. 1, 256 U.S. 490, 497, 41 S. Ct. 588, 589, 65 L. Ed. 1057 (1921) (emphasis added)

Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S. Ct. 900, 907, 79 L. Ed. 2d 67 (1984); See also, Parden v. Terminal R. Co., 377 U.S. 184, 192, 84 S. Ct. 1207, 1212, 12 L. Ed. 2d 233 (1964). "The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that [the Supreme] Court will consider the issue arising under this Amendment . . . even though urged for the first time in [the Supreme] Court." Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 467 (1945).

The Supreme Court has made it clear that a district court may find a waiver of a state's Eleventh Amendment immunity in only the most exacting circumstances. "[T]he State's consent [to suit in federal court must] be unequivocally expressed." Pennhurst, 465 U.S. at 99; see also Port Authority Trans–Hudson Corp., 495 U.S. at 305 ("The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction").

Cates v. State of Connecticut Dep't of Corrections, 2000 WL 502622, *14 (attached).

The constitutional bar erected by the Eleventh Amendment applies to suits brought by citizens against any state, Hans v. Louisiana, 134 U.S. 1, 15, 10 S. Ct. 504, 507, 33 L. Ed. 842 (1890), its departments or agencies, Alabama v. Pugh, 438 U.S. 781, 98 S. Ct. 3057, 57 L.Ed.2d 1114 (1979); and its officials when "the state is the real substantive party in interest," Ford v. Department of Treasury, 323 U.S. 459, 464, 65 S. Ct. 347, 350, 89 L. Ed. 389 (1945).

The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal

> language of the Amendment provides, but also over suits against such states brought by their own citizens. Thus, it is clear that, with few exceptions, federal courts are barred from entertaining suits brought by a private party against a state in its own name.

Dwyer v. Regan, 777 F.2d 825, 835 (2d Cir. 1985), modified, 793 F.2d 457 (2d Cir. 1986) (citations omitted); see Papasan v. Allain, 478 U.S. 265, 276, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986).

> Although Congress is empowered under section five of the Fourteenth Amendment to override Eleventh Amendment immunity and "to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority," Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S. Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242-43, 105 S. Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); Dwyer, 777 F.2d at 835, *it is well settled that 42 U.S.C. § 1983 does not constitute an exercise of that authority*. Quern v. Jordan, 440 U.S. 332, 340-42, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Therefore, since Dube's federal causes of action are brought under section 1983, "in the absence of consent[, any claims against] the State or one of its agencies or departments ... [are] proscribed by the Eleventh Amendment." Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). "This bar exists whether the relief sought is legal or equitable." Papasan, 478 U.S. at 276, 106 S.Ct. at 2939.

Dube v. SUNY,  900 F.2d 587, 594 (2d Cir  1990)(emphasis added).

Here, it is well settled that the Eleventh Amendment prohibits plaintiffs from suing the state of Connecticut in Federal Court under 42 U.S.C. §1983 for alleged violations of their equal protection and due process rights under the Fourteenth Amendment.   Accordingly, Counts Thirteen, Fourteen and Fifteen must be dismissed.

III.    **DEPARTMENT OF TRANSPORTATION IS PROTECTED BY THE DOCTRINE OF SOVEREIGN IMMUNITY AND THEREFORE COUNTS THIRTEEN, FOURTEEN AND FIFTEEN MUST BE DISMISSED**

In addition, sovereign immunity bars plaintiff's claims in Counts Thirteen, Fourteen and Fifteen which are brought pursuant to 42 U.S.C. § 1983 alleging an equal protection claim

(Count 13) and due process rights (Counts 14 and 15).  Plaintiff has not and cannot allege that the state has consented to be sued by plaintiff for alleged equal protection and due process violations.

> We have long recognized the common-law principle that the state cannot be sued without its consent ... [W]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state ... Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant.

Krozser v. City of New Haven, 212 Conn. 415, 420, 562 A.2d 1080 (1989) (citations omitted); see also Fetterman v. University of Connecticut, 192 Conn. 539, 550-551, 473 A.2d 1176 (1984); Sentner v. Board of Trustees, 184 Conn. 339, 342, 439 A.2d 1033 (1981), Horton v. Meskill, 172 Conn. 615, 623, 376 A.2d 359 (1977).  The state is immune regardless of the nature of the allegations.  Hanna v. Capitol Region Mental Health, 74 Conn. App. 264, 270 n. 7, 812 A. 2d 95 (2002).  Plaintiff has not, and cannot, allege that the state has consented to be sued in this matter for alleged violations of the due process and equal protection claims.  Accordingly, Counts Thirteen, Fourteen and Fifteen must be dismissed.

## IV.     DEPARTMENT OF TRANSPORTATION IS NOT PLAINTIFFS' EMPLOYER OR AN AGENT OF THE EMPLOYER, AND THUS THERE IS NO BASIS FOR HOLDING IT LIABLE UNDER THE REHAB ACT

Mansoor claims that he was discriminatorily terminated, and his driving certificate revoked, on account of his race, national origin, and disability.  For defendant DOT to be held liable for employment discrimination, Plaintiff must establish the requisite "employer-employee" relationship.  See Conn. Gen. Stat. § 46a-60; 42 U.S.C. § 2000e ("Title VII"); 42 U.S.C. § 12111.  The Department of Transportation was neither Mansoor's employer nor his employer's agent.  Simply put, there is no factual basis for liability on the part of DOT.

The Department of Transportation was not Mansoor's (or Naveed's) employer.  Indeed, the Complaint alleges that Plaintiffs were "taxicab drivers employed by the <u>defendant Yellow Cab Company of New London and Groton, Inc</u>." (Emphasis added) (Complaint ¶ 3).  There is no allegation that DOT was Mansoor's employer.

Similarly, DOT is not – nor is it alleged to be - Yellow Cab's agent, or to have acted in any way on behalf of, or in conjunction with Yellow Cab.  DOT is not alleged to have played any role in Yellow Cab's decision to terminate Mansoor's or Naveed's employment or to have communicated with the employer concerning this decision.  The DOT had no input into Yellow Cab's decision to terminate both Mansoor Ahmad and Naveed Ahmad and should not be considered a catch-all for litigation such as this.

The  " . . . existence of an "employee-employer relationship is the primary element of Title VII claims." <u>Gulino v. New York State Education Department</u>, 460 F.3d 361 (2d Cir. 2006). The Supreme Court  has stated that "when Congress has used the term 'employee' without defining it,  . . . Congress intended to describe the conventional master servant relationship as understood by common-law agency doctrine."  <u>Comty. For Creative Non-Violence v. Reid</u>, 490 U.S. 720, 739-40 (18989).  Accordingly, the pleadings must allege such a relationship or facts showing a legal basis for Title VII liability against the defendant.  Although there is no group of determinative factors, the element of control is the principle guide. <u>Gulino</u>, 460 F.3d at 371.[3]

In <u>Shehab v. New York State Department of Transportation</u>, 251 Fed. Appx. 9 (2d Cir. September 6, 2007)(copy attached), the court dismissed a complaint against the New York Department of Transportation, a state agency, that did not hire or control the plaintiff's job

---

[3]  In <u>Gulino</u> the court discussed and rejected three putative theories of indirect employer liability under Title VII for a state agency that is not the plaintiff's employer.

duties.  In that case the state agency's only involvement was to review the plaintiff's eligibility

for a training program.  This was insufficient to create an employee/employer relationship.

Similarly here, the plaintiffs were employees of Yellow Cab Company of New London and

Groton, Inc., and the defendant DOT had no input and had no say in either the hiring and/or

termination of the plaintiffs.  DOT's only role here is that it has some semblance of oversight

over Bradley International Airport, which is run by a quasi-independent agency which has no

direct ties with DOT.   This is insufficient to establish an employer/employee relationship.  Like

the Shehab matter, plaintiff's Rehab Act claims in Counts Nine and Ten should be dismissed.


V.      **PLAINTIFFS LACK STANDING TO BRING DUE PROCESS CLAIM
         AGAINST DOT**


        The plaintiffs in conclusory terms have alleged that their procedural due process rights

were violated by DOT in Counts 14 and 15.  It is unclear whether the counts refer to their

termination or their loss of certificate to pick up passengers at Bradley International Airport.

Regardless, as noted above, the plaintiffs were not employees of the defendant DOT and

therefore there was no duty owed to the plaintiffs.  Thus, under Iqbal and Trombly, plaintiff has

not alleged and cannot allege a viable due process claim against DOT.

        Moreover, Mansoor Ahmad refused to pick up a blind passenger with a service animal.

That was in violation of both state and federal regulations.  See Conn. Agencies Regs. § 13b-96-

26 (2000)("No certificate holder or taxicab driver shall refuse taxicab service to a patron with a

service animal") and  49 C.F.R. 37.29 ("Private entities provided tax service shall not

discriminate against individuals with disabilities by actions including, but not limited to, refusing

to provide service to individuals with disabilities who can use tax vehicles….")  The certificates

that were revoked were certificates that allowed the drivers access to parts of the airport as

needed for business purposes.  The certificates were revoked by John Moody, airport manager,

for Bradley International Airport which is a quasi-independent agency not under direct control of

DOT.    Enforcing both federal and state law cannot be deemed a due process violation.

Accordingly, plaintiff's due process claims are legally insufficient and most be dismissed.

## VI.    PLAINTIFFS' REHABILIATION ACT CLAIMS AGAINST DOT MUST FAIL IN THAT DOT WAS NOT THE PLAINTIFFS' EMPLOYER AND HAD NO DUTY REGARDING REASONABLE ACCOMMODATIONS AND PLAINTIFF MANSOOR IS NOT AN INDIVIDUAL WITH A DISABILITY

Two of the counts against defendant DOT are brought pursuant to Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. §§ 794, et seq. (Count Nine by Mansoor and Count Ten by

Naveed). [4]

The basic framework of a claim of employment discrimination under Section 504 of the

Rehabilitation Act is well settled. A plaintiff must allege that (1) he is an individual with a

disability within the meaning of the Act, (2) he is otherwise qualified to perform the job in

question, (3) he was excluded from the job solely because of his disability, and (4) his employer

received federal funding.  Borkowski v. Valley Central School District, 63 F.3d 131, 135 (2d.

Cir. 1995).

With regard to the fourth prong, as addressed above and further below, plaintiffs'

complaint fails inasmuch as defendant DOT was not the employer for Mansoor or Naveed and

therefore could not have afforded the former a reasonable accommodation when it had no control

over his employment.

---

[4] The plaintiff brought Counts Seven and Eight against the other named defendants in this action pursuant to the Americans with Disabilities Act ("ADA") and Counts 9 and 10 pursuant to the Rehabilitation Act despite the commonality of the language in all four counts.  It appears that plaintiffs are appearing to shoehorn their complaint to offset DOT's Eleventh Amendment sovereign immunity regarding ADA claims.  See University of Alabama v. Garrett, 531 U.S. 356, 374 (2001).  In Garrett, the Supreme Court held that Title I of the ADA, concerning claims for employment discrimination did not abrogate the states' Eleventh Amendment immunity from suit in federal court because it was not valid enforcement legislation under Section 5 of the Fourteenth Amendment.

As to the first prong a plaintiff must allege that he suffers from a physical or mental impairment substantially limiting one or more "major life activity." Weixel v. Bd. of Ed. of the City of New York, 287 F.3d 138, 147 (2d Cir. 2002) . The identified major life activity must be "of central importance to daily life." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999).

A handicapped person is defined as any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment. 29 U.S.C.S. § 706(8)(B).

When the major life activity involved is working, 'substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.' 29 C.F.R § 1630.2(j)(3); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed.2d 450 (1999).

Although the phrase "otherwise qualified" in the second prong, is hardly unambiguous on its face, its meaning in the context of an employment discrimination claim is fairly clear: an individual is otherwise qualified for a job if she is able to perform the essential functions of that job, either with or without a reasonable accommodation. See School Bd. v. Arline, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); Gilbert v. Frank, 949 F.2d 637, 641-42 (2d Cir.1991).

Here, plaintiff's claims under the Rehabilitation Act rests on the false syllogism that:

Mansoor suffers from dog phobia/simple phobia, he was terminated from his employment at Yellow Cab, and therefore he was terminated because of his phobia.  This does not come close to meeting the Twomby/Iqbal standard for a claim under the Rehabilitation Act .  Mansoor has not alleged sufficient facts showing that his dog phobia substantially limited a major life activity (for example, his ability to work) or that his perceived Mansoor's dog phobia to substantially limit his ability to engage in a major life activity.  The Complaint simply alleges that Mansoor suffers from a disability "which precludes him from engaging in many major life activities" and that "defendants" (not specifically DOT) knew of this alleged disability.[5]  (Compl. ¶ 8).  Even read liberally, the Complaint offers no additional facts that come close to a plausible showing that he was a qualified individual with a disability (or was perceived as disabled), or that his alleged disability could have been accommodated[6] (assuming dog phobia even amounts to a disability – a premise that is tenuous at best, see Calhoun v. Foodarama Supermarkets, Inc., No. 07-0999 (JAP), 2008 U.S. Dist. LEXIS 84935, *11 (D. N.J. Oct. 22, 2008) (describing the premise of cat-phobia as a cognizable disability as "tenuous at best"). (copy attached)  See, e.g., Logan v. Sectek, Inc., No. 3:08-cv-00209 (VLB), 2009 WL 1955441, at *3 (D. Conn. July 8, 2009)(copy attached) (dismissing ADA claim where the only facts offered by Plaintiff to show that defendant perceived him as having a disability showed only that it was "merely possible, but not plausible, that [defendant]

---

[5] Defendant DOT could not have known of any alleged disability inasmuch as it was not the plaintiff's employer and therefore had no documentation in its possession about him.

[6] Mansoor's stated reasonable accommodation – "no contact with dogs" (Compaint. ¶ 8) is not "reasonable" inasmuch as it would require a relaxation of the ADA's requirement that individuals with disabilities, for example, people with service dogs like the passenger in the instant matter, be permitted access to taxi cabs.  Neither the ADA nor Connecticut law require such diminishment of standards. See Harris v. Mills, 572 F.3d 66, 74 (2d Cir. July 9, 2009)(citing Felix v. New York City Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003) ("The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally").

perceived [plaintiff] to be disabled in accordance with the ADA definition," and plaintiff "could have alleged, but does not allege, other facts that would have taken his ADA claim from the realm of possibility to plausibility"); Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009) (granting 12(b)(6) motion to dismiss holding that allegations did not state claim for failure to provide reasonable accommodation under the ADA).

Here, plaintiffs' complaint fails to state a plausible claim for disability discrimination under the Rehabilitation Act.  He has not alleged any facts that meet the four part test.  He has not alleged any facts to suggest that DOT is his employer, that he suffered from a disability, was otherwise qualified to perform his job.  Accordingly, Counts Nine and Ten must be dismissed pursuant to Rule 12(b)(6).

## VIII.        <u>CONCLUSION</u>

For the foregoing reasons, the defendant DOT moves for dismissal of Counts Three, Four, Nine, Ten, Thirteen, Fourteen and Fifteen pursuant to Fed. R. Civ. P. 12.  Even assuming all of the facts in the complaint as true, the plaintiffs have failed to assert legally viable claims against the defendant DOT and it should be dismissed from the instant matter in its entirety.

DEFENDANT,
DEPARTMENT OF
TRANSPORTATION

GEORGE JEPSEN
ATTORNEY GENERAL

BY:     /s/ Ann E. Lynch
        Ann E. Lynch
        Assistant Attorney General
        55 Elm Street - P. O. Box 120
        Hartford, CT  06141-0120
        Tel:  (860) 808-5340
        Fax:  (860) 808-5383
        E-Mail: Ann.Lynch@ct.gov
        Federal Bar # ct08326

## CERTIFICATION

I hereby certify that on December 13, 2012 a copy of the foregoing Memorandum of Law in

Support of Motion to Dismiss was filed electronically. Notice of this filing was sent by e-mail to all

parties by operation of the Court's electronic filing system. Parties may access this filing through the

Court's system.

        /s/ Ann E. Lynch
        Ann E. Lynch (ct # 08326)
        Assistant Attorney General
        55 Elm Street, P.O. Box 120
        Hartford, CT 06141-0120
        Tel.: (860) 808-5340
        Fax: (860) 808-5383
        E-mail: Ann.Lynch@ct.gov

4204807